Acting pursuant to Congressional authorization and as Commander-in-Chief, the President implemented the Fourth Amendment's protections to American service personnel through a finely tuned set of rules that account for the special needs of the military. Here the government violated those constitutional rules by obtaining warrant-like authorization to search Mr. Seerden's smartphone from someone who clearly lacked authority to issue such authorization. Why is that a constitutional rule? It's a constitutional rule, Your Honor, because the military rules of Evidence 311 to 317 implement the protections of the Fourth Amendment. And there's a lot of evidence for that, and if I could just highlight some of that evidence. The President could delegate to the military authority to designate the Norfolk commander to be the commanding officer for purposes of this, or authorizing a search, or the commanding officer in San Diego, and he could make, whether the commander is in Norfolk or is sitting in Norfolk or San Diego, that the President seeks to delegate to, that's not a matter of constitutional dimension, that's a matter of the President, who's the Commander-in-Chief, that's a matter of his authority. But, Your Honor, respectfully, the Constitution applies differently in the military. We acknowledge that, and this Court said as much in Rendon. But when there is a system, a procedural system like we have in the civilian context with the warrant clause, that is designed to implement the structural protections of individual liberty and privacy that are embodied in the Fourth Amendment, those procedures then have to be a violation of the Fourth Amendment. Let's assume that that's true as far as it goes, but in the issue here, whether or not essentially there's a Leon good faith exception that applies in this case? That's one of the government's arguments, yes, Your Honor, but we submit that that argument is incorrect. Why is that? Well, I think that the government and the defense, Mr. Seardon, agree that McLam, Judge McLam, had the best authority, generally speaking, when we're talking about warrants or search authorizations that were issued without the requisite authority. And so in McLam, there was a federal magistrate who issued a warrant to search property that was outside of the judicial district, and so the argument, McLam, was that that search was not authorized, the warrant was not authorized under the Fourth Amendment. The McLam opinion skipped past the Fourth Amendment question and said there was good faith, but it's critical to understand why McLam reached that conclusion. Well, the military courts have clearly applied a Leon-type exception in the military setting. Yes, Your Honor. So why wouldn't that apply in this case? So we agree that the good faith question is one that the court has to analyze. We just think that the good faith exception doesn't apply when you actually apply that standard. So what police behavior would we be trying to discourage by applying the exclusionary rule in this case? Executing search authority when the authorization is facially deficient, Your Honor. And that's one of the things that the... The commanding officer issue? That's... That's... Sorry, Your Honor. Go ahead. No, Your Honor. The problem, obviously, is to deter the NCIA that the officer is executing the search authority. We would agree that... So what military police officer, having gone to the SJA at Little Creek, and then gone to the SJA in San Diego, and been told twice by the staff judge advocates, this is what you do. What reasonable military police would not then do exactly what the SJA has told them to do? One that's read the rule, Your Honor. One that's looked at... I mean, this is not the McLam situation where there's some ambiguity. In McLam, there were lower courts that were divided over it, and there was no appellate decision on point. Here we have a 1992 and 1993 opinion by the highest military court of appeals, the one that goes... Appeals from the CMA, now the CAF, go directly to the Supreme Court. And they were very clear... Yeah, but a lot of this... A lot of this doesn't implicate the Fourth Amendment at all. I mean, there are state rules of evidence that may be, or state methods of procedure, they may be violated, but it doesn't necessarily implicate the Fourth Amendment. There may be federal rules of evidence that are violated, but that doesn't necessarily rise to the level of a constitutional violation. The military system of justice is separate. They have their rules of evidence for military proceedings, and those are all well and good. But we're the authority in terms of what violates the Fourth Amendment, and I really can't see whether this search authorization was issued from San Diego, or whether it was issued from Norfolk. I don't think it has... Wherever it was issued from, it's not where it was issued from, it's what the basis of it was. And what the basis of it was, was they had a credible report of a woman who had been killed. She was crying and somewhat drunk, and she reported it to the military police and the base commander, and there was clearly, based on her report, and their subsequent conversation with her, there was a substantial basis for issuing that search authorization. It didn't really matter where it was issued from. It's not as if he had no connection with this individual, he was his commanding officer back in San Diego, and the point is, it doesn't matter where it was, whether it was issued from San Diego or Norfolk, what mattered was whether they had a reasonable basis for issuing it. And after this woman's report about what had happened to her, they had a reasonable basis for looking into it. So, your honor, let me set aside for the moment the probable cause question. I know several of your comments sort of went to that, obviously we submit that there was a probable cause problem also, but directing my attention, or directing my response to the point you just raised about why does it matter which commander? It matters for purposes of a military proceeding perhaps, but I'm asking why does it matter in terms of a federal criminal prosecution? It matters because, your honor, it goes to the validity of the search authorization. And if all that mattered under the- The validity, but not necessarily the constitutional validity, because that's, you keep trying to bootstrap every technical violation of a military ruling into a constitutional infraction. Well, your honor- And that's a big step up. No, that is a big step up, and that's just not what, because if we take your view that this was a constitutional violation, then the president of the United States would have been as limited in the authority that he can give to commanding officers in a particular location. I don't think that's correct, your honor. I don't think that's correct, because our position is not that the president was required under the Fourth Amendment to implement these particular procedures. Our position is that when the president, acting as his authority, acting pursuant to his authority as commander-in-chief, and through the authority vested in him by Congress under their Article I, Section 8 powers, that that alternate regime, that it was designed to implement the Fourth Amendment protections, that regime, once it's established, has to be followed. And failing- If the president could constitutionally, under the Fourth Amendment, authorize the San Diego command to issue this authority, that, then I don't understand why this is a constitutional violation. If the president could constitutionally authorize that commander to issue the search authorization. Because that very premise is question-begging.  No, it's not. I would apply precisely the same way in the civilian context with the magistrate. If in the Baker case, Congress had revoked the Indian tribe's sovereignty over that particular land or vested some other magistrate with authority over that land, then there would be no dispute that, obviously, that magistrate could have executed the warrant. The same is true in the McClam case. If Congress- There was no dispute in that case that Congress could not have vested the magistrate with authority to issue a warrant across the country. That's not the authority that was actually vested. And so when we're dealing with the Fourth Amendment, I mean, if all that matters under the Fourth Amendment is that there's probable cause or some reason to search, then the warrant clause does no work. And it's not our position, obviously, that the warrant clause applies in full force in the military. But military service personnel are protected by the Fourth Amendment. That is beyond dispute. This Court said as much, and Rendon and the government has never contended otherwise. So if they're protected by the Fourth Amendment, they're protected by the probable cause requirement that is in the military rules of evidence. They're protected by the procedural protections that ensure that if someone who is serving in our armed forces is going to be searched pursuant to an investigative style law enforcement search, sure, you don't have to go to a magistrate and get a warrant. But there has to be a process that ensures that someone who is actually authorized by law- And that process applies in a military court-martial, but when you have a federal criminal prosecution, you have a different process, which is to test the basis for the search authorization. That would be the federal- that's the process in federal court. Respectfully, Your Honor, if that's what this panel holds, it will be creating a split of authority with the CAF. In Nieto and Hoffman, the CAF explicitly held that those rules implement the Fourth Amendment protections. In Grisby, also, this court recognized that compliance with military law is going to get you compliance with the Fourth Amendment. And so there, the court specifically cited the predecessor to military rule of evidence 315 and said that when authorized by a commanding officer having jurisdiction over the place where the property is, the search is valid. So the converse can't be true. And I would also note that there are multiple other civilian courts, the Seventh Circuit in its Chapman decision emphasized that the procedural nature of the procedures employed by Rule 315 are grounded in the Fourth Amendment. They are the alternative to the procedures that are required in the civilian context by the Warrant Clause. But they're no less important. And it can't be the case, Your Honor, that there's just a freewheeling reasonableness test that goes only to what evidence exists without any structure as to who can actually authorize it. There's a forum to bring that up again, but it's not this one. Well, Your Honor, respectfully, the CAF substantiates claims like this in the military context. And so the only- What you're saying is that every technical violation of a military rule of evidence or federal rule of evidence or whatever or state rule of evidence or whatever, that ipso facto, they all become constitutional violations because they're procedurally deficient. That's not at all our position, Your Honor. Well, it is your position, because it's just what you've been talking about for the last 15 minutes. Your Honor, I want to be careful that I'm delineating between Rules 311 to 17 that implement the Fourth Amendment and other rules that don't. And the government cites cases that deal with other rules. The Robinson case that they cite, the recent Ninth Circuit decision, dealt with rules that were not implementing any constitutional protections. And that's a distinction that, I mean, the government repeatedly cites the Kacharis decision. Justice Stevens in that case said that the IRS's failure to follow the IRS regs was not of constitutional significance. But in reaching that holding, it distinguished the Bridges against Mixon decision. And it said that in that case, those immigration regulations were the implementation of the due process guarantees. And so when those regulations that were necessary to ensure constitutional compliance were violated, then suppression was appropriate. And that's all our position is here, Your Honor. I can't see the slightest infringement of somebody's legitimate right and expectation of privacy if his commanding officer, based on the report from the victim that he had here, issued a search authorization. It wasn't somebody out of the blue. It wasn't issued from Nome, Alaska. It was issued from his commanding officer at the San Diego Naval Base. And it was issued with a perfectly valid justification that the woman had been met at a bar, taken home, raped, and had reported it to the authority, had consented to texting with this individual and the conversations that they had had and had talked about him calling and phoning after this unfortunate occurrence. And based on all of that, his commanding officer issues a search authorization. I find it hard to believe that there is a Fourth Amendment infraction here. And as Judge Agee has pointed out, it certainly doesn't. I have my problems, but no merits. But it certainly doesn't evidence any kind of liaison problem. May I briefly respond, Your Honor? Yes, sure. So with respect to, I think Your Honor referred to it as a technical issue. Why don't you bring all this up in rebuttal? Is that OK? Yes, Your Honor. Thank you. All right. Mr. Cook. May it please the Court. The defendant cannot overcome the good faith exception here and show that the evidence should be suppressed. There is no police behavior that needs to be discouraged through the exclusionary rule. The agent sought a search authorization. They received advice from a judge advocate. They were clearly not commander shopping in the sense that they went to both the commander in Virginia for the search authorization for the hotel room and then went to the commander out in San Diego for the search of the defendant's person and his cell phone. And I think there's one also point worth noting that is how this kind of military search differs from a normal search that you would see outside the military context, which is this defendant was in Virginia for service-related training and, of course, his commander could order his return. And so unlike in a situation where a magistrate judge maybe isn't in a position to dictate what people outside of the jurisdiction of that magistrate do, this commander could order the defendant back to San Diego and at that point he would have authority over the defendant. So I think that's just an illustration of the intuition here that this rule about the commander's authority is not grounded in a Fourth Amendment interest. Can you speak to the scope of the warrant itself in terms of looking at or looking for photographs when the allegations of rape and what happened here don't seem to indicate that there was any nexus with photographs? Right. I think the nexus there was the search authorization requested text messages, photographs, videos, phone logs, contacts, and other information related to the crime. And as the government argued below, there was reason to think that potentially a reasonable inference people take a lot of photographs, that that could be evidence that corroborated the rape victim's allegations that she had been bar hopping with the defendant. And so the hope was that there would be evidence of that nature found on the phone that might enable them. Photos from the bar. Right. And that people take a lot of photographs these days when they're out doing things and save those photographs. So are photographs now just added to every search warrant since people take a lot of photographs? I don't think that... Every search warrant that involves a phone, I guess. Right. No, I don't know that there would be that kind of a blanket rule, but the requirements here on what kinds of evidence you might find that relate to the crime is one that's susceptible to reliance on reasonable inferences. And in addition, this court's recent opinion in Thomas, I think, provides a good basis for applying simply a good faith doctrine. Well, and the fact that she was blacked out and couldn't remember, given the nature of the crime, there may well have been photographs taken of her in a vulnerable state. That I think her condition throughout the evening and the night of the sexual assault made corroboration, which is always important for a victim's claim, particularly important in the context of this case, because her memory was undeniably spotty. It was essentially, I guess, the search was in a significant sense to test her veracity as to whether this was a credible report or something that was made up in some way because she'd been drinking. That's correct. And the government is entitled, as cases like Meathers shows... And he texted me. And those were things that a search of the phone could have corroborated. And so in that case, it functioned as a test of her veracity as to whether they wanted to go forward with further proceedings against this guy or whether they had real questions about the report. That's correct. I mean, the victim's credibility would be pivotal in any criminal case that was prosecuted. Is it so her credibility was reinforced by what they found? That's right. If the court doesn't have any further questions, ask that the court affirm and we'll rely on our briefs. Steve? No, we don't have any further questions. Mr. Greenhild, you have a rebuttal time. Thank you, Your Honor. If I could, I'll start off by making two quick points in response to your comment right toward the end of my opening statement, Judge Wilkinson, and then I have four points as to why this court should be very hesitant to find that this is not a Fourth Amendment violation. So with respect to the question of whether this is just a technical violation or technicality, I would note that although the government cites the playpen cases, the line of cases that McLam is related to, that actually cuts in our favor as to the constitutionality question because four circuits, including this one, skipped the constitutionality question and went right to good faith. But the Third and Eighth Circuits both found constitutional violations where there was a search under a warrant that was invalid. The Sixth Circuit and Master and the Tenth Circuit and the Baker decision we cite also both find constitutional violations. So we've got four circuits on our side on the question of whether searching without valid authorization, granted in the context of a warrant, is a constitutional violation, not a technicality. Second, Your Honor, Judge Wilkinson, question I think, why is this important as a matter of military law? It's the commander in California, the commander in Virginia. I would note that military law has vested investigative search authority in the commander with authority over the place for at least 70 years. The language that we cite that's now in Rule 315 was part of the original 1980 Military Rules of Evidence. It was taken from the UCMJ, it was in the 1969 edition, it was in the 1950 UCMJ, and it was in the Army Manual that preceded that. So this is historically rooted in military law that in order to protect and implement the constitutional protections of service personnel, we have structural protections like the Warrant Clause as a matter of military law. So four points, if I can, as to why it would be a bad idea to say that this is not a violation of the Fourth Amendment. First, there should be no doubt that if the Court holds that this is not a violation of the Fourth Amendment, it is creating a split of authority between this Court and the CAF. In Nieto and Hoffman, the CAF explicitly says that these are constitutional violations, and in Mix and Chappell, the Court's analysis undoubtedly holds that searching without valid search authority under 315D1 is a violation of the Fourth Amendment. Well, I can just avoid all that by assuming there's a constitutional violation and going right to Leon. If the good faith exception applied on the facts here, then that would be a good option, but unfortunately it doesn't because the facts are clear and the law is clear. Here, there's no doubt. I mean, the government acknowledged, this is at page 176 of the Joint Appendix, there's no question that the San Diego commander did not have authority over the place, and we're not dealing with some convoluted rule. I mean, it says... It certainly befuddled the staff judge advocates at two major military installations. Your Honor, I mean, if you really want to parse the Pickett Affidavit, all it says is that it had been determined between NCIS and JAG authorities that authorization for the cell phone would come from the commanding officer. But we don't know why it would or even if it should or whether it was authorized to. And it would be very detrimental to say that this court is going to allow basically advice of counsel defenses in the face of a clear rule. You can't just talk to a lawyer and then go murder someone. I mean, you have to... That is the military lawyer. Well, Your Honor... There's no place else for the military police officer to go. Chappell and Mix are cases from the highest court of military appeals from 1992 and 1993. There are only two cases in the supplemental authorities section of the Manual on the Military Rules of Evidence. It's Chappell and Mix. This is not some confusing or newfangled issue like we had in McLam. This is a case where the law was abundantly clear and the facts were abundantly clear. There's not a great answer in the record as to why they decided to get the commanding officer in California to do it. But this court would be inviting shenanigans if you can just ignore... Oh, this is something without practical consequence in this case. You know, it just doesn't... What we're talking about really has zero practical consequences. There may be a violation of military rules of evidence that do involve violations of privacy and then that would be factored in as a relevant factor. But this is just... This is just technical. It doesn't... on anybody's privacy rights, on any kind of behavior that we wish to deter, on any kind of military officer or police officer that's running off the rails. It has no practical consequence in terms of the kind of activity by military or civilian authorities that we wish to deter. He's consulted with the judge advocate general. He was the man's commanding officer. This was not unreasonable behavior and it is without practical consequence. May I briefly respond and then conclude, Your Honor? Your time is up, but you may briefly respond with emphasis on the adverb. Your Honor, the practical significance here is no different than the practical significance of the warrant clause. And so if the warrant clause has no practical significance, this doesn't either. Your Honor, we would respectfully ask that the decision of the district court be reversed. Thank you. We'll adjourn court and come down and brief counsel. This honorable court stands adjourned until 4 p.m. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, G. Steven Agee, Stephanie D. Thacker